Margaret Gallagher Lustig on behalf of the people of the state of Illinois Good morning. We have allotted 30 minutes for this case with the time being divided equally between the two sides. Appellant, of course, will go first. You may reserve a few minutes for rebuttal if you like. Okay. With that, you may begin when you're ready. Thank you. Okay. May it please the court, counsel. In this particular case, the defendant, Appellant Charles Dahms, who is defending the underlying matter where he was convicted of a battery upon a public way, which is a felony in the state of Illinois, and was acquitted on two other charges of great bodily harm as well as upon the status of a taxi cab driver. We raise six particular issues. I don't intend for purposes of this oral argument to raise all of them. I think they're fully brief. There are a couple that I want to address specifically before the panel this morning and certainly entertain any questions that the panel has as to any particular issues. The first issue I'd like to talk about is the trial court's error in denying the motion to dismiss. The defendant had filed a motion based on CLADIS, which generally tracks substantially similar to Brady v. Maryland, however, for different purposes. CLADIS dealing specifically with discovery violations. In this particular case, at the time of the hearing when the court rendered its decision to deny the motion to dismiss. This tape, this video you're talking about, it was never in the possession of the police department, was it? The government, the CTA, had it. The police said the same thing. Well, that's a different government entity, isn't it? Isn't the CTA its own municipal corporation? I don't disagree that it is a different governmental entity. However, it is the government, possession of the government, and that's our position in this particular case. But the CTA was not a party or a victim or defendant in the case. It's like a third party, a different agency than the police department, and in the course of their normal business, they erased the tape. Why should this case be dismissed? And we'll talk about that later. You know, they did dismiss it in CLADIS, but rather in a distinction. Why should the case be dismissed when a third party who, you know, if I'm videotaping something on the sidewalk, and I happen to videotape a crime, and then I flush out my phone and destroy it, why should the defendant get off? Because I deleted something off my telephone. If in that example, Your Honor, you are a governmental entity or represent a governmental entity. Well, say that. Not the one, not the State of Illinois, but say another, a CTA employee. Well, a personal CTA employee who is on the job or not on the job, that certainly would make the difference. A CTA phone, a CTA telephone. And it was, and I suppose under that particular, well, I will answer that if I could go back to explain what happens in this particular case. After the event happens, the bus driver in this particular case presses a button on the drive that's there in order to preserve that video. Otherwise, it just keeps running. And we know that from this case, we know that from other cases, that that's the way the CTA's video operates. So the CTA knew at that moment that there was some critical evidence that may be there, and they preserved it. The police then, they then were in communication with the CTA. They represented through the documents that they were seeking and obtaining this video. The defendant certainly relied upon that. And then when it came time to say that they didn't have that video, they didn't ever get it from this governmental entity, the CTA. We issued our subpoena on behalf of Mr. Doms, and we were told it had already been destroyed. So in the answer to your question about what would happen in the event that a CTA employee using a CTA phone observes an event and captures that and communicates that to the police that they have this video, I think that it would be similar to this where there's the obligation to preserve. And to the extent we don't really know what's on it, it's immaterial for purposes of Brady. Because it could have exculpatory evidence on there. In this particular case, the exculpatory evidence would go to the impeachment of the CTA driver, perhaps. It could go to the testimony of the third-party witness who could be challenged on the veracity of what's seen. These CTA videos sometimes are complete videos that show lots of information. Sometimes they don't. But the only person who says that they saw that was the officer. But counsel, even assuming that there was a duty somehow for the CTA to preserve the video, CLADIS doesn't stand for the proposition that the case is dismissed in the event that the video is not preserved, does it? I agree that CLADIS in and of itself doesn't compel as a sanction for that violation a dismissal. So if I may, in transcript three, which is the hearing on November 2, 2012, in that particular case, Judge Alonzo, the trial court, found that there was a violation. He had to have found that there was a violation because if we go to page A51 of that, he says, in terms of a remedy, clearly the bus driver, if she's a witness, is not going to be able to say that's the guy in my identification. It would have corroborated by a video that I activated. Of course, that's not anything that the state would try to do or the bus driver would try to do. But absent that, I don't believe that any other remedy is appropriate. So he's considering the remedy. He doesn't allow the bus driver to identify Mr. Doms because the video has been destroyed. So implicit in the fact that there's a determination that a remedy was required, Judge Alonzo found that there was a violation. So what we're here to talk about is what was the appropriate remedy for that violation. We believe it's a dismissal because similar to what's expected of... Well, counsel, couldn't the trial judge just have been trying to do what he thought would make this fair, just erring on the side of caution? He never said there was a discovery violation. Did he? I didn't see that. Well, if he's fashioning a remedy, he's finding that there is a discovery violation. Why does that have to be the case? I can't imagine a reason for the court to determine that a remedy is necessary if there's no violation. So although the transcript isn't implicit that he's found a violation, the fact that he's considered a remedy already means that he has found that there was a violation, in my opinion. Did you file a motion for discovery in this case? Absolutely. When did you do that? It was done orally right at the beginning, and then they tendered all the discovery. I know they tendered the discovery at the beginning. I didn't see any motion for discovery from you, though. You orally moved for discovery? Yes. Did you orally move for the production of that videotape? We orally moved for all discovery in this case. But you didn't subpoena the tape until December 12th. We didn't subpoena the tape until we knew that the police had not done what was expected of them, which was they identified the video. So when you subpoenaed the tape, you had learned already that it had been destroyed? When we subpoenaed that videotape, it was too late. We were told by then that the CTA, through its regular process, had destroyed that video that the police had said that they had seen or were aware of, and that the CTA was aware of, was preserved for a period of time. Is there any evidence in the record that this particular tape was exculpatory for your client? There is no evidence in this particular case that we know with any certainty, because no one produced that video, except the officer said that he reviewed it, and he says that there wasn't anything on there. However, we certainly would be entitled to know whether or not that's true or not true, because the police, in trying to fashion a case against Mr. Doms, it certainly would behoove them to do that. It would behoove them to not turn over evidence that would be exculpatory, and they certainly have every reason to get that if it were inculpatory. But didn't the evidence from the evidentiary hearing, not from the initial pretrial discussions with counsel, because there were some statements made by the ASA. Correct. But at the hearing, the evidence, we did not hear from Mr. Higgins at the CTA. We did not hear from Officer Barber, who was the one who talked with Ayesha White, nor did we hear from Ayesha White. We only heard from, I can't really pronounce his general name. He said that he never possessed the videotape, and he never saw it, and to the best of his understanding from talking to Officer Barber, she never possessed it, nor did she ever see it. He also, Lopez Tello also testified that as far as his conversations, it was either his conversations or Barber's conversations with Mr. Higgins, Mr. Higgins did not believe that anything was captured on the video, that there was nothing material in the video. It was maybe facing the wrong direction, what have you. I mean, isn't that what all the evidence showed? Well, we don't know what that evidence is because we don't have the video, but it may have included exculpatory evidence, and so that's why I'm harping on the fact that it was. Would you acknowledge that the police, not the CTA, but the police never had possession of the video? Absolutely. There is no evidence in this particular case that despite the knowledge that this video had been preserved, that the police didn't retain custody or control over that video. So how do you argue a due process violation or a discovery sanction when you can't show first that the police had the video in their possession? I'm not sure that the law in the state of Illinois makes it so that only the police who lose evidence, if they're the governmental entity, can be the catalyst or the cause for a discovery violation. The motion for discovery itself, doesn't it require a party to give evidence that they have in their possession or control, turn it over? If the cape is not in their possession, control, how can the destruction be a violation of discovery? That's an interesting question, because what we as defense counsels in the trial courts find is that the government, meaning the state, has the ability to give evidence to the police, but the state's attorney's office does not always, from the very inception of the case, have all the evidence. They require the police to provide them whatever keeps coming up to them and that they have in their possession. And so that's why in a lot of these cases we continue to get evidence for quite some time. But that's the key in their possession. They never got this one. Are you talking about the state's attorney's office was in possession of it? Police. I don't disagree. I think we're all in agreement that the police never took custody from a known tape that was in another governmental entity, the government, the people, in their possession, the CTA. But, counsel, there could be any number of governmental entities that could be in possession of any type of evidence in any type of case. Doesn't your argument expand the scope and the boundaries even of discovery and discovery violations and the duty to disclose? Well, I don't believe it does, because as it relates to discovery, the things that have to be turned over are those matters that are material and relevant to the case that is pending. Not that a governmental agency has an obligation to expect that somebody is going to be charged with something or to anticipate that charges may happen and someone's, we've got to preserve things all the time for a certain period of time until we know with certainty that no one on this particular day was charged with anything. That's just not the case. In this particular fact, under these circumstances, the police were aware that the CTA had preserved a video, that video was in their possession. That video may have included exculpatory information or evidence that was material and relevant to the impeachment, perhaps, of the bus driver who testified or the third-party witness who testified, or, in fact, it may be inculpatory of Mr. Doms. We just don't know. But because it wasn't preserved, a key opportunity was lost, and that's what Brady v. Maryland, as well as CLATA, stand for. At what point is the defendant responsible for preserving his own evidence? If you have a third-party who has potentially exculpatory evidence, when is it the burden on the defendant to go get it? That's a great question. If it were known at the time that there was a bus, and it were not known at the time that that video was referenced in reports as having been preserved, then certainly would have been the obligation of Mr. Doms at that time to issue a report. But because a request for discovery was made upon the State's Attorney's Office, and it was represented that this video existed, what the court would be requiring of Mr. Doms to do was to double over every single aspect of the police's investigation and to expect that they are not going to get those things that are referenced in the reports. And I don't think that that's a fair, that's not a fair assessment for a defendant to have to anticipate that the government is going to destroy evidence. And so that puts an affirmative obligation on the defendant to come up with what would be considered Brady material or something subject to a dismissal under CLATAS. If I could go to the next, unless there's any more questions on this particular issue. Okay. Point two is that the court erred in instructing the jury. In this particular case, there are two instructions that are critical. And one is where the court gave that instruction, and that's the citizen's arrest instruction. And the other is the court's unwillingness to provide the defendant his theory of the case to the jury's instructions. As this court knows, instructions are very important to give guidance to a jury. Juries... So what was the prejudice from the citizen's arrest instruction? Sure. The citizen's arrest instruction, first off... I guess what I'm saying is why is it warranted in a trial, which is what you're saying. Right. Absolutely. The citizen's arrest instruction first is a defense instruction. It is intended to be an opportunity for the defendant, through the instructions, to explain why he intentionally made contact with somebody. Okay. I'm just trying to cut to the chase. Let's assume for the purposes of our discussion that it was error. Why is it reversible error? Sure. I believe that by giving the citizen's instruction, citizen's arrest instruction, the court is essentially putting a stamp of approval upon Mr. Anadage's conduct, making it proper for him to have done what he did in this particular case. And that's just not okay. By suggesting that Mr. Anadage was allowed to make contact with Mr. Doms, that he was allowed to obstruct him, allowed to stop him, that's just not what this case is about. Isn't that kind of an argument for the State? That isn't what this case is about. This case isn't about which of the people was acting reasonably on the sidewalk. Your argument about the jury instruction, I think, is that it took the cab driver and it painted him in a favorable light. Absolutely. It said he had the right to be there. It said Mr. Doms had broken a windshield. Potentially a criminal act, which is why there was an arrest. But the jury's question that I think was put out correctly in the jury instructions is, did or did not the defendant batter Mr. Anadage? Did he pick up his briefcase and smack him in the face with it? And regardless of whether Mr. Anadage had the right to be there or not or had the right to use some degree of force to prevent him from leaving, that sort of is, even if that wasn't particularly good for your client, it didn't speak to the direct issue the jury had to reach a verdict on, did it? Well, it certainly gives credibility to the testimony of Mr. Anadage, and to the extent that Mr. Doms testified contrary to that, it seems to undermine his, the theory of the case, first of all, as well as his credibility. The citizens are... It doesn't undermine your theory of the case. Your theory of the case was that it was an accident, that you were trying to, the defendant was trying to pull the suitcase away from the grip of the cab driver, and in doing so, he hit him in the face. That was your argument, right? Correct. How did the jury instruction prevent you from articulating that theory? I understand. The fact that the court gave that instruction didn't prevent us from arguing our case, but it likely caused confusion to the jury, because it wasn't germane to the issues in this case. It was a side issue that the court injected, sua sponte. There was no evidence that Mr. Anadage believed he was making a citizen's arrest. There's no evidence that Mr. Anadage was attempting to do anything other than to get Mr. Doms to stop and look at the window. So the instructions are intended to not cause confusion. In this particular case, we believe that giving that instruction absolutely would have caused confusion to this jury, and I think that the timing of deliberation is important. I suspect, and we're all just spitballing whether or not the jury concluded it quickly or not, but I suspect that this jury concluded quickly that the aggravated battery related to taxi cab driver status was eliminated right away, because nothing about this case related to his status as a taxi cab driver. I suspect also, given the evidence in this particular case, that the jury quickly dispensed with the great bodily harm. There was no evidence of great bodily harm. So what could possibly tie up the jury for as many hours as they did to deliberate this particular case? The jury instructions certainly are the type of things that can cause confusion. In this particular case, we believe the injection by the trial court of this instruction is one of a number of errors that would require a new trial so as to prevent confusion and allow a retrial on the evidence. Counsel, is your argument that given the length of time that the jury deliberated and the note to the court with respect to being deadlocked is the basis for a determination that they were confused? It's certainly evidence, potentially, of a problem reaching a verdict, because we can't go back and ask them questions about whether they were confused or not confused. I don't know. There's very limited evidence in this particular case. There's maybe three hours total of evidence. It went very quickly. And then the jury deliberated for an exceedingly long time given that. And in fact, I think around the 6 o'clock hour, that's when my partner, Mr. Muslin, had requested, given the time of deliberation already, that a mistrial be declared, and the court said no. If I could go to my next issue, if you don't mind, which is the negligence instruction. The negligence instruction here, we're not saying that Mr. Doms was negligent or not negligent, but certainly a negligence instruction was, should have been given, the criminal negligence instruction should have been given in this particular case to allow the defendant to argue his theory, that if the jury believes it's negligent and not intentional, then they must acquit him of the charges of aggravated battery upon a public way. But didn't the jury instructions already say that? The jury instructions didn't say what our theory of the case is. Well, they didn't mention negligent, but the jury instructions said to convict this defendant, you have to find that his act was either knowing or intentional. You could argue to the jury, and you did. It wasn't knowing or intentional. It was this other thing called negligence, but whatever. It wasn't knowing or it wasn't intentional. Why isn't that, why aren't you able to argue your theory of the case that way? Well, we weren't prevented from arguing the theory of the case because we did. But the difference between simply arguing and having the court instruct the jury about what the law is, that changes everything about what a jury hears. And the force of effect... Did the jury instructions define intent or knowingly? Was there any jury instruction on intentional or knowingly? I believe there was, yes. Okay. So, I mean, all you have to argue for that is the negative, that it's not one of those two things. I don't disagree that you can argue that, but the difference between being able to have a defendant's theory of the case in the instructions and not having that theory of the case in the instructions is a game changer. Because with the court instructing the jury about the law, and counsel, whether it be the state or defendant's counsel, being able to point to the instructions specifically in order to give guidance to our theory based on those instructions is so important and can't be understated. And so the fact that we couldn't argue to the jury and say, ladies and gentlemen of the jury, you're also going to be receiving an instruction on negligence, and that instruction reads this. And you're also going to get a theory, you're also going to get an instruction about what this state has to prove in this particular case. But isn't it simpler what was done? Because in order to be convicted, it has to be either knowingly or intentional, and everything else is not guilty. You don't have to fit it into knowingly, intentional, and then negligence. It's either knowingly, intentional, and everything else is not guilty. Isn't that the simplest way to not confuse the jury? No. I would agree with you that it was more simplified in the sense that it omitted our instruction, but it didn't make things easier for the jury to understand. Because if the jury had the instruction. Well, you could argue that. Certainly argue negligent. But, Your Honor, the difference between simply arguing and arguing with being able to point to what the law is that the judge is going to instruct is significantly different. The state would require the same thing. They would want the instruction for what they have to prove to be shown in the jury instructions and not simply argued. If there were some, I can't fathom it, but if there were some instruction that didn't fully apprise the jury about what had to be proved through the instructions, the state would jump up and down and say, Your Honor, you're going to be instructing the jury about what the law is in this case and what we have to prove, and we need the jury to know what we have to prove, and it has to be through the instructions. And for these very reasons, that's why there are criminal IPI instructions. Your client wasn't charged with negligence. I understand that. I'm sorry. I didn't mean to interrupt you. The Illinois Supreme Court has decided in its wisdom to include a negligence instruction in the criminal IPI. There is no crime involving negligence that, it's not a crime if it's negligent, right? Is that something you know for a fact? I don't. I believe that. Is there negligent homicide? I'm actually not sure as I sit here myself. That's a big statement to make. If you're saying that there's no crime involving negligence, then one would ask why is there a jury instruction? I suppose my revision to that, Your Honor, would be I believe if the Illinois Supreme Court in its wisdom believed that the negligence instruction was only applicable to certain crimes that may exist out there where the issue of negligence, they would include that in the committee comments most certainly. But in this particular case, it's a theory of the case. It was the theory of Mr. Doms in this particular case. And we believe that we are entitled, and by giving that instruction, there's no prejudice whatsoever to the State. The only person being prejudiced was Mr. Doms by not — Without belaboring the point, I think what Justice House was alluding to earlier is you get everything other than knowing and intentional on your side. Anything that isn't knowing or intentional is not guilty. For example, you could argue that the accident was through no negligence of — the accidental hitting of the cab driver's face was through no negligence, no culpability whatsoever of your client. It was just a freak accident. Or you could argue it was negligent. You could even argue that your client was reckless. You have a whole panoply of options, anything other than knowing or intentional. If we — if the jury was instructed on negligence, I think Justice House's point is well taken. Wouldn't that actually be worse for you? Because then you're almost being put to a burden of proof on just one of the possibilities. Well, in this particular case, there was no affirmative defense, so we didn't have any obligation in this particular case. But you get my point. I mean, if that jury instruction is in there, that could confuse the jury as to what the State has to prove and not prove. Or even worse for you, it would limit your possible avenues for exoneration to just one, negligence, versus anything other than knowing and intentional. I understand. Isn't it better for you that they didn't give that jury instruction? It's not. We absolutely categorically don't believe that not giving that instruction in any way inert to the benefit of Mr. Downs, because definitionally, theory of the case-wise, the jury only heard us making our arguments as compelling as we could make them to them. And without the judicial stamp of approval about what the law is, it makes all the difference in the world. And so on those two jury instructions, we believe that this requires a reversal of the conviction and sentence and remaining for a new trial. Okay. I thought you were going to say... Did you have another question? No, I was going to say you can save a few minutes for your rebuttal. Do you have another point? I do. I do. Just briefly on the unconstitutionality of the statute. In this particular case, what we have done is different than any other cases that have been before any other trial or appellate court in the state of Illinois on the issue of whether or not the statute aggravated battery based on the fact that it took place on a public way. We brought evidence before Judge Alonzo, showed him that, just by brief examples, there could have been any number of other ones, that this is an arbitrary statute resulting in an arbitrary charge. We absolutely believe that on its face, it is unconstitutional. When you try to think about where might a battery take place that isn't in a public way, or a place where the public is available to go, very few. If it's in a home, it becomes a domestic violence issue. If it's maybe back in someone's office where the public is not allowed to go. Otherwise, what it allows the state to do is, on its whim, depending on how it wants to charge, to charge the exact same act two different ways. One is a felony, taking away both fundamental and non-fundamental rights, as well as saddling someone with a felony conviction forever. In this particular case, unless the court agrees with me on the issue of the motion to dismiss that there was a violation of the proper sanction, is that the case be dismissed, I think this court has to decide the issue of the constitutionality. What constitutional provision are you moving under? I'm sorry? What constitutional provision are you alleging was violated? What constitutional provision? What provision of the constitution? Are you saying that it violated equal protection? Are you saying it violated due process? Are you saying it violated the First Amendment? Not the First Amendment. I didn't think so either. I thought I was getting an equal protection argument from you. Certainly, that is in part. I think it addresses other issues as well as that. Due process, I think that it affects that as well in the sense that. Well, this is. Go ahead. Our Supreme Court has deemed this statute constitutional based on slightly different facts in your case. Absolutely. But they aren't rebound by that. Rebound by that decision, those decisions. I think when this court considers that, it has to look to what the facts were that were before the Supreme Court on that very issue. In this particular case, we have much different facts because we have the evidentiary record about what Chief Judge Evans required the clerk to turn over to us in order for us to challenge the constitutionality of the statute. And there, like I said before, there hasn't been any other court that has been confronted with the evidence related to the statute and why it is and why it should be deemed unconstitutional. And although the legislature can craft its statutes and believe that it's doing the right thing and it's put together a fine statute, it's the job of this court to make a determination of whether or not it passes constitutional muster. And I respectfully suggest that it absolutely does not. And we can stand on our briefs on the other issues as well as any other thing that we related to that. I think I've just got a little bit of time. Yeah, you have a few minutes. All right. You have a few minutes on rebuttal. Ms. Lustig. May it please the court. As all of the justices pointed out, in the instant case, the video is from a CTA post, not a Chicago police car. What the CTA video potentially contained is immaterial because in this case we have two eyewitnesses who identified the defendant and testified to the battery in this case. There was no prejudice here because the video would not have been exculpatory. The CTA video would not have shown the battery. At the hearing on the motion to dismiss, it was determined that the bus most likely was facing in the wrong direction and would not have captured what transpired as far as the battery was concerned. There was no discovery violation here and the video was never in the possession of the Chicago Police Department. The officer never testified that he reviewed it. Where law enforcement did not create a CTA video in question, much less destroy it, defendant's reliance upon CLADIS is misplaced. The trial court did not abuse its discretion by denying defendant's motion to dismiss. In CLADIS, a motion was filed for sanctions and the court found that the police department who had created the video had in fact destroyed it five days after the defendant's arrest. Counsel, did the trial judge in fact fashion a remedy and if so, a remedy in relation to what? Yes. In keeping with CLADIS, what he said was that he was not going to dismiss the charges, which is what the defendant had requested. However, in keeping with the holding in CLADIS, he said if, for instance, a CTA video were to surface, that Aisha White, the CTA bus driver who testified, could not in any way corroborate her testimony using the CTA video. But he felt that to dismiss the charges against the defendant, which was what was requested, was a gross exaggeration of the holding in CLADIS. Did the judge find a discovery violation here? No. No, there was no discovery violation found because the police officer testified, as you stated, Justice Ellis, that it was never in the possession of the Chicago Police Department and so there could not be a discovery violation. But the defense counsel says, then what was he doing fashioning a remedy in relation to what? I believe he was, they based their motion to dismiss on CLADIS and I believe what, I don't think he was fashioning a remedy. He was saying, however, if a video did surface, that it couldn't be used. But it was unnecessary. It was a hypothetical remedy is what you're saying. Yes. Yes. And Aisha White witnessed, the CTA bus driver actually witnessed the battery and she had testified during the motion on the hearing to dismiss that the bus was most likely facing in the wrong direction. But it was unnecessary and immaterial what the CTA, it was not exculpatory because it wasn't even, it didn't even capture the battery. There's never been a dispute. We don't know if it was exculpatory. Isn't that the better way to say it? We don't know what was on the video. I would say that from the evidence that we have in the record that it was highly unlikely and I believe the parties even had stated that it would not have caught the battery down the street on Clinton. It was facing the wrong way, the bus. So it's, and it was unnecessary considering they had two people, Sheldon Smith, the pedestrian, who was coming the opposite way on the sidewalk, and Aisha White's testimony, they actually testified. And when Aisha White did testify, she never even mentioned anything about a video which would be in holding with what the trial court said that if in fact there was a video, which we never used in the prosecution because it was unnecessary, that she could not use that video to corroborate her testimony. But it was unnecessary. So I would say that the trial court did not abuse its discretion by denying defendants' motion to dismiss based on CLADIS. With regard to the jury instructions, specifically the private person's arrest instruction, the defense in this case was challenging the taxi driver's actions. Implicit in that was the fact that the taxi driver had no right to try and stop the defendant after he broke his windshield. There was no prejudice here. The defendant was acquitted of two of the three charges. The jury had to make a credibility determination. Did the defendant break Terry, the taxi driver's windshield? And consequently, did Terry have a right to try and stop the defendant? Jury instructions are within the sound discretion of the trial court. And in this case, there was a very unique set of facts. I thought there was a question before the jury as to whether the cab driver had the right to try and stop the defendant. Correct. Why was that a question? Because the defense was questioning the taxi driver's actions in trying to stop the defendant and bring him back to see what he had done to his taxi cab. So the standard of... Do you consider that instruction, if you believe that that was a part of the case, or a theory of the defendant's case, why didn't the state then tender that instruction? Why did the... You didn't tender that instruction. You just argued that the instruction was appropriate because of the defendant's theory of the case. Right. Because the defendant is arguing that the taxi driver had no right to try and detain or stop the defendant. So what I'm saying is that it's the trial court's responsibility to reasonably give any jury instruction that correctly instructs the jury on all recognized legal issues arising in that case. So then you thought the jury instruction was appropriate. Yes, I did. So any time a defendant has an argument about a fact in the case or some circumstance taking place in the case that doesn't speak directly to an element, do you think the judge has a sua sponte duty to give the jury instruction? Not a sua sponte duty to give that jury instruction, but certainly in this case it was appropriate given the fact that the taxi driver was trying to stop the defendant after he had broken his windshield and then further hit him in the face with a briefcase, knocking him unconscious, breaking his nose, and causing... But citizen's arrest is an affirmative defense, right? In most cases it is. Yes, that's correct. There's an example of a case where it's not an affirmative defense? It's always an affirmative defense, right? Yes, it's an affirmative defense, but in this case... Why is it not an affirmative defense in this case? Because it was appropriate under the facts of this case where the defense was alleging that the taxi driver had no right to try and stop the defendant who had just broken his windshield. So if the defendant had said in his testimony that the cab driver was acting all crazy, there would be an insanity instruction in this case? No, not necessarily. But I believe this was in the sound discretion of the trial court, and in this particular case with this set of circumstances, I believe it was appropriate. It was an affirmative defense, and you wouldn't have tended it as the state because there's no affirmative defense, but it was appropriate because it was a defendant's theory of the case. Correct, and it was an issue that had arisen in this particular case. It was an unusual set of circumstances, and Judge Alonzo said, this is unusual that I would give this instruction, and he even discussed it with the parties. And I believe it was appropriate under these sets of circumstances where the defense was challenging his right to try and detain the defendant. With regard to the negligence instruction, I'm sorry. No, that's okay. The defense's argument is that this jury instruction injected the trial court's opinion as to how the events unfolded in a certain way, and in a way that was very favorable to Terry, the cab driver, and unfavorable to the defendant. It said that the jury instruction said, first of all, that he was performing a citizen's arrest, which I think we would all, even a lay person would say that means that something criminal had happened previously, the smashing of the windshield, with the same thing used to batter the defendant later, by the way. And then it also said in the jury instruction that this lawful citizen's arrest would permit the use of sufficient force to prevent the arrestee from escaping. I think the defense's argument is that there was a confrontation, clearly. There's no dispute about that between the cab driver and the defendant, and the judge was saying, the cab driver did everything right. Well, the jury had to make a credibility determination. Well, they had a jury instruction. Right, and they had to determine whether the defendant, in fact, did break his windshield, and whether... They didn't have to determine whether the defendant broke his windshield. That had nothing to do with the elements of any crime in this case. Well, if they wanted to believe that then the taxi driver had the right to try and stop the defendant, and also in that instruction, it says that he can reasonably, he can use reasonable force that he believes necessary to defend himself from bodily harm while making the arrest. So in this case, clearly, he was hit in the face with a briefcase, knocked unconscious, had his nose broken. I believe that he was trying to say that he was hit, it was testified to by the defendant, and he was trying to get him to come back to his taxi cab. And I believe that under these circumstances, which are unique, that the trial court did not abuse his discretion in giving this particular instruction. I believe it was reasonable, considering the fact that the defense were the ones that were stating that Terry, the victim, the taxi driver, had no right to try and stop the defendant. This wasn't a jury instruction that supported the defendant's theory of the case. This was actually a jury instruction that flatly contradicted the defendant's theory of the case. I wouldn't say that it contradicted it, because I believe the jury had to make that determination whether they felt that the taxi driver was justified in trying to stop the defendant. I don't think it showed any prejudice on the part of the trial court, or that the trial court was in any ways expressing an opinion, because I believe the jury was responsible for making that credibility determination. With regard to the negligence instruction, as Justice Ellis pointed out, and Justice House, an element of aggravated battery is that the defendant intentionally or knowingly caused bodily harm. The defendant would not have been found guilty if the jury determined that the defendant's briefcase accidentally hit the taxi driver in his face, which is what the defense was arguing. And they did argue that in the court. So therefore, the trial court properly refused to give a negligence jury instruction in this criminal case. But in the same means that you would support the decision of the trial judge to give the instruction on the citizen's arrest, doesn't your same reasoning apply then with respect to the negligence instruction? That was the theory of the case. I do not agree, because as Justice House pointed out, he was... Oh, I agree with Justice House. Okay. But you just made an argument with respect to the citizen's arrest instruction, deeming it appropriate because it, in point of fact, was the defendant's theory of the case. Negligence was also the defendant's theory of the case. And they argued in this instance for the giving of the negligence instruction, which the trial judge refused. Right. Following your argument, accepting your argument as it relates to the citizen's arrest instruction, doesn't the same argument apply with respect to the negligence instruction? No, because I believe the reasoning behind giving a negligence instruction, even though it may be a theory of the defendant's case, is not... is... is not proper because this is a criminal case and the defendant would be acquitted of the charges if he was found guilty of negligence instruction. As Justice House said, anything beyond that. However, I do believe that the trial court did not abuse his discretion in giving the personal, private person's citizen's arrest instruction because in this particular set of circumstances, and I agree with you that the defense theory was that he was... you know, but I think that they... that it was appropriate in that instance because it applied to these facts. The negligence instruction does not, but the fact that he was... the taxi driver was trying to stop the defendant, I believe in that case it was proper to give that instruction. So do you know if there... the defense raised an issue of why do we have a negligence instruction in the criminal idea? And I think he didn't make an absolute statement, but he was saying he was not aware of any criminal laws dealing with negligence, and so then why is there a negligence instruction in the idea? Do you have any comment on that? Well, there are some particular crimes where negligent conduct comes into them. In this particular case, the aggravated battery statute... No, not an aggravated battery, but just... No. There are crimes where it's just a criminal idea. It comes in, I believe, in involuntary manslaughter and in certain crimes, but certainly not within aggravated battery. I would... The aggravated battery statute is constitutional as applied to this defendant. There was no question in this case that the battery occurred on a public way. Defendant's equal protection argument has already been rejected by Illinois courts because on a public way has a rational basis. It's intended to protect the public safety by making it more serious to commit a battery in a public place and is directly related to the harm to be remedied. It is not relevant that other persons were charged with battery and not battery on a public way. The state's attorney isn't endowed with exclusive discretion to decide which of several charges shall be brought or whether to prosecute at all. The battery in this case clearly occurred on a public way and the aggravated battery statute as applied to this defendant was constitutional. With regard to the fact that the jury had been deliberating for seven hours, I would assert that the trial court did not abuse its discretion by giving the prim instruction when, first of all, the defendant did not object to the trial court giving the prim instruction and it was... it was reasonable considering the jury had been deliberating for seven hours acquitting the defendant of two of the serious charges and finding him guilty of one. Under the totality of circumstances, the trial court did not interfere with the jury's deliberations or coerce a verdict. For all of the foregoing reasons, does anyone have any questions? For all of the foregoing reasons, we ask that defendant's conviction and sentence be affirmed. Thank you. Mr. Sandberg? You have a few minutes. Rebuttal? Very briefly. First thing I want to talk about is what Justice Ellis had raised related to certainly a perception that the court has that, first of all, there is no issue in this criminal case related to what happened with the window. There's absolutely no issue. He hasn't been charged with a property crime. He had been, initially, I think the complaint had it and then that wasn't pursued. So it had nothing to do with it. The only reason that came in was the court was seeking to allow some background to explain why Mr. Anadage came and confronted Mr. Dunn. So, what Your Honor had talked about was the citizen's arrest instruction is essentially putting the stamp of approval on the actions of Mr. Anadage, giving credibility to him and his version of events and to the detriment of Mr. Dunn. A jury could be using that to say, wait a second, the judge has instructed me that if there was a crime committed, the breaking of the window, that Mr. Anadage was permitted to stop Mr. Dunn and, wait a second, if he's willing to break a window, wouldn't he be willing to batter a person? That could be a problem for the jury to consider. The fact that what Justice Ellis had talked about with what the prejudice of that instruction does can't be understated. It's giving validity to Mr. Anadage. It's giving validity to what he says happened. But Counsel, the ultimate question here is whether your client reared back with a briefcase and slammed it into the cab driver's face. And if I remember the testimony correctly, Mr. Anadage did not testify to that. He didn't say, he doesn't remember what happened in that brief span of time. The testimony that makes your defendant the batterer as opposed to an innocent slip are two uninterested witnesses. Mr. Smith, I think the pedestrian, and Ms. White, the cab driver. They both said he, of his own accord, the only one holding the briefcase, hit the cab driver in the face. Even if we were to agree with you that the jury instruction was an improper one and maybe it placed a favorable light on the cab driver, the question that the verdict was based on whether or whether or not a battery took place. And that was supported by evidence having nothing to do with Mr. Anadage. I respectfully  that given the instructions in this case that that's necessarily how the jury reached its conclusion. I think that the citizen's arrest instruction would have absolutely had an effect on the considerations of the jury globally and had created confusion that could have been and likely was to the detriment of Mr. Downs. And to Justice Cobbs, your comment about the state essentially trying to argue out of both sides of its mouth about Justice Alonzo got it right when he gave the instruction because that's what the defendant was arguing. That it was not proper for Mr. Anadage to be stopping him but at the same time saying that if that's our theory that it wasn't proper, then similarly we're not entitled to the criminal negligence instruction and you can't have it both ways. Is the court going to instruct on what our theory is because it believes it has an obligation to do that? Well then it needs to give everything. So it either wipes out everything and says no citizen's arrest instruction because there is no evidence of that. There is no affirmative defense of that. It is improper to be used as a prosecutor's instruction in this particular case and moreover we believe that we can not rely upon the negligence instruction. I think that citizen's arrest instruction should not have been given and it was objected to and I believe that the negligence instruction was necessary because this is a state of mind and the statute of conduct required a battery. Finally, I know I have exhausted my time. One of the questions that Justice Howe asked originally related to the motion dismissed was about the colloquy that the court ended up engaging in when it was ruling. That entire colloquy is from A50 to A52 in transcript 3. I believe given what they are talking about and although it is not explicit through that colloquy, he found that there was a discovery violation and some of the basis for that is the court begins, all right, thank you Mr. Muslin. The motion is going to be respectfully denied. It is asking for an explanation of what they were supposed to do. And the CPD perhaps should have done more in terms of follow-up, but this would be a massive expansion of CLADIS. I don't believe it would be a massive expansion of CLADIS, but what the court is saying is the government, CTA, had to keep this. The defendant had a right to rely upon the government getting what it said it had and was going to be seeking before it had to subpoena those records. In this particular case, given the nature of where things were at, the defendant did subpoena Union Station video. Turns out there wasn't anything there that was shared with the state's attorney's office. The video that was included as part of the record on appeal came from the Metro headquarters building, and that shows the confrontation. This includes the contact between the briefcase and Mr. Anadagi, but it demonstrates everything up to that point. And while Aisha White, the CTA person, testifies that she didn't believe that the video was going to show anything or would have showed anything, she was in the middle of the intersection trying to make a turn, so that video may have included the type of exculpatory evidence that Brady intends to be produced and could have been used for impeachment of both Ms. White and the third party witness that was there as well. And so for all the various reasons,  first that the conviction and sentence be vacated and the matter dismissed. Secondly, we request that the conviction be overturned and the sentence vacated and remanded for a new trial. I want to let the court know further that Mr. Doms has completed his probation fully in this matter. So. All right, thank you very much. Thanks. All right, the case is well argued, very interesting, and well briefed. The matter will be taken under advisement and a decision will be issued in due course.